# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Donald Hall,
    Petitioner

vs.

Christopher Yanai,
    Respondent

Case No. 1:02cv488
(Spiegel, J.; Hogan, M.J.)

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Oakwood Correctional Facility in Lima, Ohio, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on the petition; respondent's return of writ as supplemented, together with accompanying exhibits; petitioner's "traverse" in reply to the return of writ; and respondent's submission in response to this Court's Order filed July 29, 2004. (Docs. 1, 14, 16, 17-19, 24, 30, 32).

### Procedural Background

On April 17, 1981, petitioner was indicted by the Hamilton County, Ohio, grand jury on one count of rape as defined in Ohio Rev. Code § 2907.02 and one count of aggravated burglary as defined in Ohio Rev. Code § 2911.11. (Doc. 17, Ex. 1). With counsel's assistance, petitioner filed a written plea of not guilty and not guilty by reason of insanity and suggestion of incompetency to stand trial. (*Id.*, Ex. 2). Petitioner was examined by Dr. Elaine Chirlin of the Central Psychiatric Center. After a hearing where Dr. Chirlin's report, other evidence and arguments of counsel were heard, the trial court found petitioner was "neither mentally ill, mentally deficient, nor a psychopathic offender, and is sane, and competent to stand trial." (*Id.*, Ex. 3).

Petitioner waived his right to a jury trial. (*Id.*, Ex. 4). After a trial before the court, petitioner was found guilty as charged. (*Id.*, Ex. 5). On November 30, 1981, petitioner was sentenced to consecutive seven (7) to twenty-five (25) year terms of imprisonment for the rape and aggravated burglary offenses. (*Id.*, Ex. 6). The order of sentence states that at sentencing, petitioner "was notified of the right to appeal as required by Crim. R. 32(A)(2)."[1] (*Id.*). Respondent has submitted evidence indicating that the transcript of the sentencing hearing "no longer exists" because it was "disposed of according to [the] retention policy" of the Hamilton County Court Reporters Office. (Doc. 32).

Petitioner did not pursue a timely appeal from his conviction and sentence. Instead, over two years later, on January 17, 1984, petitioner filed a pro se motion to suspend further execution of sentence, wherein he requested release from prison on "shock probation." (Doc. 17, Ex. 7). The trial court denied the motion on January 28, 1984, and petitioner did not attempt to appeal that decision. (*See id.*, Ex. 8).

Approximately eleven and one-half years thereafter, on July 31, 1995, an Assistant Ohio Public Defender filed a notice of appeal and motion for delayed appeal pursuant to Ohio R. App. P. 5 on petitioner's behalf to the Ohio Court of Appeals, First Appellate District. (*Id.*, Exs. 9, 10). In the motion, counsel provided no explanation for the nearly fourteen year lapse in time for seeking appellate review and argued only that petitioner's trial attorney should have acted to perfect petitioner's appeal rights given

---

[1] Ohio R. Crim. P. 32(A)(2) provides:

After imposing sentence in a serious offense that has gone to trial on a plea of not guilty, the court shall advise the defendant of the following:

(a) That the defendant has a right to appeal;

(b) That if the defendant is unable to pay the cost of an appeal, the defendant has the right to appeal without payment;

(c) That if the defendant is unable to obtain counsel for an appeal, counsel will be appointed without cost;

(d) That if the defendant is unable to pay the costs of documents necessary to an appeal, the documents will be provided without cost;

(e) That the defendant has a right to have a notice of appeal timely filed on his or her behalf.

Upon defendant's request, the court shall forthwith appoint counsel for appeal.

that petitioner suffers from "personality disorders," is "illiterate and retarded," and thus was unable to pursue a timely appeal on his own behalf. (*See id.*, Exs. 10, 12). On October 27, 1995, the Court of Appeals overruled petitioner's motion without opinion. (*Id.*, Ex. 13). Petitioner's counsel sought leave to appeal to the Ohio Supreme Court. (*Id.*, Ex. 14). On March 27, 1996, the Ohio Supreme Court denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 16).

Next, on May 23, 1996, counsel filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 on petitioner's behalf with this Court, wherein he alleged as grounds for relief that petitioner was denied (1) his right to an appeal, (2) effective assistance of counsel on appeal, and (3) due process when the trial court failed "to ascertain whether appellant knowingly waived his right to appeal." (*See id.*, Ex. 17, pp. 5-6; Ex. 20, p. 3). On April 27, 1998, the district court denied the petition with prejudice based on its conclusion that each of petitioner's claims for relief lacked merit. (*See id.*, Ex. 20). However, when petitioner appealed further to the United States Court of Appeals for the Sixth Circuit, the Sixth Circuit vacated the district court's order and remanded the case for entry of a judgment of dismissal without prejudice so that petitioner could exhaust the available state remedy of a "second motion for delayed appeal" with respect to his ineffective assistance of counsel claim, which the court determined had not been presented as a federal constitutional issue in petitioner's first motion for delayed appeal to the Ohio courts. (*See* Doc. 19, Ex. 31, pp. 3-9). In so ruling, the Sixth Circuit noted that "[i]f the Ohio rules did not permit the filing of a second motion for delayed appeal, we would conclude that [petitioner] had procedurally defaulted his ineffective assistance claim by failing to raise it in his first motion" and "would affirm the district court's judgment on that basis." (*Id.*, p. 7 n.2).

On March 6, 2001, the district court entered a final order in the case, dismissing petitioner's federal habeas petition in accordance with the Sixth Circuit's remand order "without prejudice to refiling after petitioner has exhausted apparently available state remedies with respect to his ineffective assistance of counsel claim." (*Id.*, Ex. 33). In order to avoid potential statute of limitations issues arising from the dismissal of the action without prejudice, the district court also ordered, subject to certain conditions, that the "one-year period in which a habeas corpus action under 28 U.S.C. § 2254 must be instituted pursuant to 28 U.S.C. § 2244(d)" was to be tolled "effective May 23, 1996, the date the instant petition was filed." (*See id.*).

3

On April 4, 2001, in accordance with the federal courts' directive, petitioner's counsel filed a second motion for delayed appeal with the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 34). In the motion, counsel argued for the first time that petitioner "never knowingly, voluntarily, or intelligently waived his right to appeal or to have counsel appointed for that appeal." (*Id.,* Memorandum In Support, p. 2). Counsel also contended for the first time that petitioner was never told he had a right to appeal; that neither the trial court nor defense counsel ever explained to petitioner "in a manner that he would understand, what an appeal was, how to file an appeal, []or what the benefits or detriments of appealing the trial court's decision were;" and that petitioner "was left uninformed until 1995, when a fellow inmate assisted him in writing to the Office of the Ohio Public Defender for assistance." (*Id.,* pp. 4-5; *see also* attached Affidavit of Thomas Kenneth Lee, ¶ 5). In his attached supporting affidavit, counsel further averred that petitioner is an "illiterate, mentally retarded, and mentally ill man with a full scale IQ of 46;" has "no idea how to request an appeal, how to file an appeal, and that . . . there was a deadline for filing an appeal;" and "does not understand what an appeal is, or what it entails, although he is very adamant that he is innocent and that he would like his case reviewed." (*Id.,* Affidavit of Thomas Kenneth Lee, ¶¶ 3, 6-7).

On May 11, 2001, the Court of Appeals summarily overruled petitioner's second motion for leave to file a delayed appeal, stating only that "the motion is not well taken . . . as the appellant has failed to provide sufficient reasons for failure to perfect an appeal as of right." (*Id.,* Ex. 37). Petitioner filed an application for reconsideration, which was denied without opinion on June 15, 2001. (*Id.,* Exs. 38-39). Petitioner then sought leave to appeal the denial of his motion for delayed appeal to the Ohio Supreme Court. (*Id.,* Ex. 40). On September 5, 2001, the Ohio Supreme Court denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 42).

The instant petition for writ of habeas corpus was filed by petitioner's counsel on October 19, 2001.[2] (Doc. 1). In the petition, petitioner claims as the sole ground for relief that petitioner "was denied effective assistance of counsel and his right to appeal,

---

[2] Petitioner filed his petition in the Northern District of Ohio. (*See* Doc. 1). On June 5, 2002, the action was transferred to the Southern District of Ohio. (*See* Doc. 28). On June 26, 2002, the action was transferred from the Southern District's Eastern Division to this Court, which has venue over the county where petitioner was convicted and sentenced, for all further proceedings. (*See* Doc. 29).

in violation of the Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to assist his client, a mentally handicapped individual[,] in filing and perfecting an appeal." (*Id.,* p. 4). He alleges as "supporting facts:"

> Petitioner . . . is an illiterate, mentally handicapped individual with an IQ of 46, who is also mentally ill with schizophrenic tendencies. . . . [Petitioner] never waived the right to appeal his conviction. On the contrary, he has been trying for over twenty years to appeal his case.
>
> Because of his limited mental abilities, and the fact that he is illiterate, [petitioner] could not perfect an appeal by himself and relied instead on the justice system to help him. Unfortunately, the system failed. [Petitioner] . . . asks only for that which he never gave up – the right to appeal.

(*Id.,* p. 7).

It does not appear that the petition poses a statute of limitations issue. In any event, respondent has waived such an argument because he has not asserted it as an affirmative defense in the return of writ. *See Scott v. Collins,* 286 F.3d 923, 927-31 (6th Cir. 2002); *Harwell v. Million,* 77 Fed.Appx. 296, 298-99 (6th Cir. Aug. 4, 2003) (not published in Federal Reporter). Respondent does argue, however, that the petition is subject to dismissal either without prejudice on exhaustion grounds or with prejudice on waiver grounds. (Doc. 16, pp. 10-12). Alternatively, respondent contends that petitioner is not entitled to habeas corpus relief based on the merits of his claim. (*Id.,* pp. 6-10).

## OPINION

### A. The Petition Should Not Be Dismissed On Exhaustion Or Waiver Grounds

In the return of writ, respondent contends that the petition should be dismissed because petitioner has not exhausted an available state court remedy or, alternatively, because petitioner has waived his constitutional claim for relief due to his procedural default in the state courts. (Doc. 16, pp. 10-12).

In support of his exhaustion argument, respondent relies on an unpublished Sixth

Circuit decision–*Harding v. Russell,* 27 Fed.Appx. 372 (6th Cir. Oct. 11, 2001) (not published in Federal Reporter). (*See* Doc. 16, pp. 10-11). In *Harding,* the Sixth Circuit panel reversed the district court's decision to dismiss a § 2254 petition brought by an Ohio prisoner based on the prisoner's failure to exhaust the state remedy of an application to reopen his appeal under Ohio R. App. P. 26(B) with respect to his claim that his appellate counsel's failure to file a timely appeal amounted to ineffective assistance of counsel. *Harding,* 27 Fed.Appx. at 373. In so ruling, the court held that Ohio R. App. 26(B) does not apply to cases where counsel's alleged ineffectiveness is based on his "failure to even start the appellate process." *Id.* at 376-77. The court also found that petitioner had correctly raised the claim in a state post-conviction petition brought pursuant to Ohio Rev. Code § 2953.21, and that even if he had not followed the correct procedural route, "the Ohio courts gave him what was, in truth and in fact, a decision on the merits of the ineffective assistance of counsel claim." *Id.* at 376, 377. The court reasoned further that the Ohio courts' ruling in the post-conviction proceeding that petitioner's ineffective assistance claim was or could have been raised in his previously denied motion for delayed appeal, and was thus barred from review by the doctrine of *res judicata,* "foreclose[d] any possibility that an application to the Ohio courts raising the ineffective assistance claim under Rule 26(B) would be any more productive than the application raising the claim under O.R.C. § 2953.21 was." *Id.* at 376. The court concluded that at that juncture an application to reopen the appeal under Ohio R. App. P. 26(B) would merely be a "repetitious application[] . . . for relief," which is not required under § 2254 to satisfy exhaustion concerns. *Id.* (quoting *Keener v. Ridenour,* 594 F.2d 581, 584 (6th Cir. 1979)).

This case is distinguishable from *Harding.* Here, petitioner did not present his claim that he was denied effective assistance of counsel and his right to appeal to the Ohio courts in an application for reopening under Ohio R. App. P. 26(B). Instead, petitioner properly presented his claim to the Ohio courts in his motions for delayed appeal. On two occasions, after considering petitioner's arguments, the Ohio Court of Appeals refused to allow petitioner a delayed appeal, expressly finding on the second occasion that petitioner had "failed to provide sufficient reasons for [his] failure to perfect an appeal as of right." (*See* Doc. 19, Ex. 37). In denying him leave to appeal and dismissing his appeals "as not involving any substantial constitutional question," the Ohio Supreme Court upheld the Court of Appeals' decisions to deny petitioner a delayed appeal from his conviction and sentence. (*See* Doc. 17, Ex. 16; Doc. 19, Ex. 42). The *Harding* decision indicates that if petitioner were now required to also exhaust the remedy of a state post-conviction petition as respondent contends, the

petition would be dismissed on state *res judicata* grounds. *See Harding,* 27 Fed.Appx. at 375-76. To require petitioner at this juncture to go back to the state courts to raise in a post-conviction petition the same claim already rejected by the Ohio courts in ruling on his two motions for delayed appeal would be to require a "repetitious application for relief," which is unnecessary to satisfy the exhaustion requirement under 28 U.S.C. § 2254. *Cf. Clinkscale v. Carter,* 375 F.3d 430, 436-39 (6th Cir. 2004) (by invoking and exhausting "all levels of Ohio's standard, established appellate review process," petitioner satisfied exhaustion requirement), *cert. denied,* _ S.Ct. _, 2005 WL 407121, 73 U.S.L.W. 3363 (U.S. Feb. 22, 2005) (No. 04-792).

Respondent also contends that petitioner has waived his constitutional claim for relief due to his procedural default in the state courts. (Doc. 16, p. 12). In support of this argument, respondent relies on a footnote contained in the Sixth Circuit's order vacating the district court's order denying petitioner's first federal habeas petition and remanding the case for entry of a judgment of dismissal without prejudice so that petitioner could exhaust the state court remedy of a "second motion for delayed appeal." (*See id.*; *see also* Doc. 19, Ex. 31). In the footnote, the Sixth Circuit stated: "If the Ohio rules do not permit the filing of a second motion for delayed appeal, we would conclude that [petitioner] had procedurally defaulted his ineffective assistance claim by failing to raise it in his first motion" and "would affirm the district court's judgment on that basis." (Doc. 19, Ex. 31, p. 7 n.2). However, in this case, the Ohio courts did not deny petitioner's second motion for delayed appeal based on any procedural rule prohibiting the filing of such a motion. Rather, it appears the Ohio Court of Appeals considered and rejected petitioner's arguments asserted in his second motion for delayed appeal because they were insufficient to establish cause for petitioner's failure to perfect an appeal as of right. (*See* Doc. 19, Ex. 37). Therefore, any failure by petitioner to raise his constitutional ineffective assistance of counsel claim in his first motion for delayed appeal did not amount to a procedural default that would justify a finding of waiver in this case. *Cf. Clinkscale,* 375 F.3d at 440-41 (finding no procedural default "because the Ohio courts were giving a full and fair opportunity to adjudicate and grant relief on [petitioner's] federal constitutional ineffective assistance claim . . ., and they never refused, on procedural grounds, to rule on that claim").

Accordingly, in sum, the Court concludes that in the absence of exhaustion and waiver concerns, petitioner's claim for habeas corpus relief is subject to review on the merits.

### B. Petitioner Is Not Entitled To Relief Based On His Claim That He Was Denied Effective Assistance Of Counsel And His Right To An Appeal

In the petition, petitioner asserts as the sole ground for relief that he was denied his constitutional rights to effective assistance of counsel and to an appeal based on his trial counsel's failure to assist him, "a mentally handicapped individual," in filing and perfecting an appeal. (Doc. 1, pp. 4, 7).

Generally, under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). However, by its terms, this provision only applies to claims that were "adjudicated on the merits in State court proceedings." *Clinkscale,* 375 F.3d at 436 (citing *Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir. 2003)). In cases such as this where the state court fails to address the constitutional issues raised, the federal court conducts a *de novo* review, instead of applying the deferential AEDPA standard of review. *Id.; Maples,* 340 F.3d at 436-37 (pointing out that in *Wiggins v. Smith,* 539 U.S. 510 (2003), the Supreme Court reviewed the portion of the claim not analyzed by the state court *de novo*, without deferring to the state court or applying AEDPA's standard of reasonableness); *see also Towns v. Smith,* 395 F.3d 251, 257 (6th Cir. 2005); *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003).

The Constitution does not require states to grant appeals as of right to criminal defendants seeking review of alleged trial errors. *Evitts v. Lucey,* 469 U.S. 387, 393 (1985). However, once a state does provide the right to appeal following a criminal conviction, the appeal process must comport with the Fourteenth Amendment's guarantees of due process and equal protection. *Id.* at 393, 403; *see also Douglas v. California,* 372 U.S. 353, 356-57 (1963); *Griffin v. Illinois,* 351 U.S. 12, 18 (1956).

The purpose of a first appeal provided as of right by a state is to determine

whether the individual defendant has been lawfully incarcerated and to ensure a correct adjudication of guilt or innocence. See *Evitts*, 469 U.S. at 402; *Griffin*, 351 U.S. at 18-19. By deciding that an appeal is so important that it must be available as a matter of right, the state itself recognizes that the appeal plays such a crucial role that it cannot be decided arbitrarily; nor can the state otherwise deny an appellant fair procedure. *Burkett v. Cunningham*, 826 F.2d 1208, 1221 (3rd Cir. 1987) (citing *Evitts*, 469 U.S. at 404). Due process concerns are implicated when the state fails to assure a criminal defendant an adequate opportunity to present his claims and to obtain a final determination on the merits of the appeal. *Evitts*, 469 U.S. at 402, 405; *see also Burkett*, 826 F.2d at 1221; *Galloway v. Stephenson*, 510 F. Supp. 840, 842 (M.D.N.C. 1981). Equal protection concerns are implicated when the state treats a class of defendants differently for purposes of offering them a meaningful appeal. *Evitts*, 469 U.S. at 405.

A defendant has the absolute right guaranteed by the Sixth Amendment to the effective assistance of counsel on his first appeal as of right. *Douglas*, 372 U.S. at 356-57; *see also Evitts*, 469 U.S. at 395-97; *Ross v. Moffitt*, 417 U.S. 600 (1974); *Ward v. Wolfenbarger*, 323 F.Supp.2d 818, 828 (E.D. Mich. 2004). The Supreme Court has recognized that "[t]he need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to the appellate stage. Both stages of the prosecution, although perhaps involving unique legal skills, require careful advocacy to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over." *Ward*, 323 F.Supp.2d at 828 (quoting *Penson v. Ohio*, 488 U.S. 75, 85 (1988)). Because the person appealing his criminal conviction "must face an adversary proceeding that–like a trial–is governed by intricate rules that to a layperson would be hopelessly forbidding," *id.* at 829 (quoting *Evitts*, 469 U.S. at 396), "the services of a lawyer will for virtually every layman be necessary to present an appeal in a form suitable for appellate consideration on the merits," *Evitts*, 469 U.S. at 393-95.

It is well-settled that the Constitution is violated if a criminal defendant is denied an appeal "by reason of his lack of knowledge of his right and the failure of his counsel *or* the court to advise him of his right to appeal with the aid of counsel." *Goodwin v. Cardwell*, 432 F.2d 521, 522-23 (6th Cir. 1970) (emphasis added); *see also Henderson v. Cardwell*, 426 F.2d 150, 154 (6th Cir. 1970). It is also well-settled that a "lawyer who disregards specific instructions from the defendant to file a notice of appeal" is constitutionally ineffective. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)

9

(citing *Rodriquez v. United States,* 395 U.S. 327 (1969)); *cf. Peguero v. United States,* 526 U.S. 23, 28 (1999) (under *Rodriquez,* "when counsel fails to file a requested appeal, a defendant is entitled to . . . an appeal without showing that his appeal would likely have had merit"); *Waldron v. Jackson,* 348 F.Supp.2d 877, 889 (N.D. Ohio 2004) (and cases cited therein) ("Since *Evitts,* the Sixth Circuit has consistently held that a defendant, who sought to appeal his conviction, but whose counsel failed to properly perfect an appeal, was entitled to a delayed appeal.").

In this case, petitioner does not dispute the fact that, as stated in the November 30, 1981 sentencing order (*see* Doc. 17, Ex. 6), the trial court complied with the requirements set forth in Ohio R. Crim. P. 32(A)(2) by informing petitioner of his rights to appeal and to appointed counsel on appeal. (*See* Doc. 24, p. 14 n.2). Petitioner also does not contend that he ever requested or indicated any desire to appeal his conviction to either his counsel or the trial court other than generally "declar[ing] his innocence." (*See id.,* pp. 13-14). Rather, it appears that petitioner is claiming that an appeal should have been pursued because he never waived his right to appeal and that, because of his mental disabilities which made it impossible for him to perfect an appeal on his own, his attorney was ineffective in failing to file and perfect an appeal on his behalf. (*See id.,* pp. 12-15; see *also* Doc. 1, pp. 4, 7).

First, the Court rejects petitioner's contention that he is entitled to an appeal because he never "waived" his right to appeal. In *Swenson v. Bosler,* 386 U.S. 258, 260 (1967) (per curiam), the Supreme Court stated: "When a defendant whose indigency and a desire to appeal are manifest does not have the services of his trial counsel on appeal, it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel." *See also Turner v. North Carolina,* 412 F.2d 486, 488-89 (4th Cir. 1969); *Thorbus v. Beto,* 339 F. Supp. 501, 504-05 (W.D. Texas 1971); *Tucker v. Meadows,* 234 F. Supp. 882, 884-86 (M.D. Tenn. 1964); *cf. Rodriquez,* 395 U.S. at 331 (when retained counsel attempted to withdraw from federal criminal case and moved for *in forma pauperis* status, which should have made trial judge aware that petitioner would be unrepresented on appeal, trial court's failure to inquire into circumstances effectively deprived petitioner of right to appeal); *United States ex rel. Smith v. McMann,* 417 F.2d 648, 654-55 (2nd Cir. 1969) (indigent defendant must be advised of his appeal rights whether or not he indicates a desire to appeal), *cert. denied,* 397 U.S. 925 (1970). Some courts within the Sixth Circuit have interpreted this statement in *Swenson* as requiring the defendant's knowing and

intelligent waiver of his rights to an appeal and to counsel on appeal, which cannot be presumed from a "silent record." *See, e.g., Ward,* 323 F.Supp.2d at 829; *Duncan v. United States,* 842 F.Supp. 1016, 1017 (M.D. Tenn. 1993), *aff'd mem.,* 28 F.3d 1213 (6th Cir. 1994); *United States v. Aloi,* 773 F.Supp. 55, 63 (N.D. Ohio 1991), *vacated in part,* 9 F.3d 438 (6th Cir. 1993);[3] *cf. Boyd v. Cowan,* 519 F.2d 182, 184 (6th Cir. 1975) (holding "there was no knowing, intelligent, and intentional relinquishment . . . of either appellant's right to counsel at appeal or of his right to appeal" in the absence of evidence in the record that (1) petitioner was personally advised of his attorney's opinion about the futility of an appeal and agreed with such advice, or that (2) petitioner delegated to his sister the decision as to whether or not to appeal); *Hill v. Jago,* 774 F.2d 1162 (table), No. 83-3448, 1985 WL 13680, at **2 (6th Cir. Sept. 30, 1985) (unpublished) (finding that petitioner voluntarily waived his right of appeal when he voluntarily dismissed his direct appeal "despite his awareness of the consequences"). However, these decisions ultimately turned on whether constitutional violations had occurred either because the defendant was neither aware nor informed of his appellate rights, or because counsel failed to perfect an appeal specifically requested by the defendant. *See Ward,* 323 F.Supp.2d at 829 (finding constitutional violation because petitioner was never advised of his right to appeal or his right to appointment of counsel on appeal); *Duncan,* 842 F.Supp. at 1023 (finding no constitutional violation because the evidence failed to support petitioner's contention that he had directed his attorney to file an appeal); *Aloi,* 773 F.Supp. at 62-63 (finding constitutional violation because petitioner was not advised, and was thus unaware, of his right to appeal or right to appointed counsel on appeal).

As the Fifth Circuit has recognized, "[w]hile some circuits have spoken in terms of waiver when addressing the decision whether to appeal, no circuit has failed to find waiver when the petitioner actually knew of his appellate rights and no circuit has inquired into the mental condition of the petitioner at the time he was advised of his appellate rights." *Norris v. Wainwright,* 588 F.2d 130, 136-37 & n.3 (5th Cir.), *cert.*

---

[3] On appeal, the Sixth Circuit disagreed with the district court's ruling in *Aloi* to the extent the lower court found that a non-indigent defendant with retained counsel did not knowingly and intelligently waive his appellate rights. *Aloi,* 9 F.3d at 443-44. The Sixth Circuit reasoned that because the right to advice about one's appellate rights is based on "the equal protection principle established in *Griffin, Douglas,* and *Swenson* that prohibits discrimination on account of poverty," the "Ohio court was under no constitutional obligation to advise a *non-indigent* defendant, *represented by retained counsel,* of his right to appeal in forma pauperis." *Id.* at 444 (emphasis in original).

11

*denied*, 444 U.S. 846 (1979). Although courts ordinarily require a voluntary and intelligent waiver of a known constitutional right, *see Johnson v. Zerbst,* 304 U.S. 458, 464 (1938), "[t]he right to appeal . . . is not a negative right to be used as a shield against government intrusion." *Childs v. Collins,* 995 F.2d 67, 69 (5th Cir.), *cert. denied,* 510 U.S. 1016 (1993); *see also White v. Johnson,* 180 F.3d 648, 654-55 (5th Cir. 1999). Instead, as discussed above, *see supra* p. 8, the right to appeal is a state-created right; it is not a component of the Sixth Amendment right to effective assistance of counsel or an independent right found in the Constitution, such as the right to be free from self-incrimination or the right to a trial by jury. *See Norris,* 588 F.2d at 137; *see also United States v. Sledd,* 575 F.Supp. 578, 582 (N.D. Ill. 1983) (citing *Rodriquez,* 395 U.S. at 329, and *United States v. Robinson,* 361 U.S. 220, 226 (1960)). "[I]t is a positive right that must be affirmatively exercised." *Childs,* 995 F.2d at 69; *see also White,* 180 F.3d at 654; *Norris,* 588 F.2d at 137 ("A defendant properly informed of his appellate rights may not 'let the matter rest' . . . and then claim that he did not waive his right to appeal."). "Consequently, waiver of the right to appeal requires only that there be a knowledge of the right to appeal and a failure to make known the desire to exercise that right." *Childs,* 995 F.2d at 69 (and cases cited therein); *see also White,* 180 F.3d at 654 ("a defendant may be held to have waived the right to appeal upon a showing that the defendant was fully informed of his appellate rights and failed to make known his desire to exercise those rights"). In *Roe,* the Supreme Court implicitly endorsed the Fifth Circuit's position by expressly rejecting a per se rule effectively imposing the duty on counsel in all cases "either (1) to file a notice of appeal, or (2) to discuss the possibility of an appeal with the defendant, ascertain his wishes, and act accordingly." *Roe,* 528 U.S. at 478.

Accordingly, this Court concludes that petitioner was not entitled to have an appeal pursued on his behalf simply because he never expressed a knowing and intelligent waiver of his right of appeal. In any event, it appears that petitioner in fact "waived" his appellate rights under the appropriate standard enunciated by the Fifth Circuit in *Childs* and *White.* Here, it is undisputed that the trial court informed petitioner of his appellate rights pursuant to Ohio R. Crim. P. 32(A)(2). The Court is not persuaded, as petitioner's counsel suggests in the "traverse" brief (*see* Doc. 24, p. 14 n.2), that petitioner was unable to comprehend the rights that were explained to him by the trial court. As the district court found when it rejected petitioner's claim raised in his prior habeas corpus petition: "On September 24, 1981, petitioner was found sane and competent to stand trial. . . . He ha[s] not identified any intervening event between that date and the date of sentencing that would have undermined his competency."

(Doc. 17, Ex. 20, p. 5; *see also* Ex. 3). Although it appears from the record that petitioner was made fully aware of his appellate rights, he failed to make known his desire to exercise those rights. He, therefore, cannot claim now, after "let[ting] the matter rest" for nearly fourteen years, that he did not waive his right to appeal. *Cf. Norris,* 588 F.2d at 137.

Petitioner also has argued that in light of his known mental disabilities, his trial counsel provided ineffective assistance by failing to file and perfect an appeal on his behalf. Petitioner has not cited, nor could this Court find, any case where counsel was placed under a special duty to ensure an appeal was perfected for a client with mental disabilities who had not expressed a desire to appeal his conviction. Petitioner relies only on the Supreme Court's decision in *Roe,* which like this case involved a defendant who never clearly conveyed his wishes about whether or not to pursue an appeal. In *Roe,* the Supreme Court held that in cases where counsel consults with the defendant about an appeal, counsel "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Roe,* 528 U.S. at 478. The Court further held that in cases where counsel has not consulted with the defendant about an appeal, such failure to consult amounts to "professionally unreasonable" conduct only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 478, 480.

Petitioner has not demonstrated that his counsel's conduct was ineffective to the extent counsel consulted with petitioner about an appeal. Petitioner has never indicated that he expressly instructed his trial counsel to appeal his conviction as required under *Roe.* Despite petitioner's contention to the contrary, petitioner did not sufficiently demonstrate that counsel was instructed to appeal his conviction simply based on the fact that petitioner "chose to contest his guilt by going to trial" and that he "always declared his innocence."

In addition, petitioner has not shown that his counsel failed to consult him about an appeal when there is reason to think that a rational defendant would want to appeal, or that petitioner reasonably demonstrated his interest in appealing his conviction. In *Roe,* the Supreme Court stated that "[a]lthough not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because

such a plea may indicate that the defendant seeks an end to judicial proceedings." *Roe,* 528 U.S. at 480. It appears at first blush that this factor weighs in petitioner's favor because the contested conviction came as a result of a trial and not a guilty plea. However, it is not sufficient standing alone to reasonably demonstrate that petitioner was interested in pursuing an appeal. Otherwise, any person who choses to go to trial instead of enter a guilty plea will automatically be found to have reasonably evinced an interest in pursuing an appeal at a time before the trial and resulting conviction have even occurred. As discussed above, *see supra* pp. 12-13, although petitioner is retarded, illiterate and has other mental disabilities, he was deemed competent to stand trial. Petitioner has not provided any evidence to suggest his competency was undermined at the time of his sentencing when he was informed of his appellate rights, including the right to appointment of counsel to represent him on appeal without cost. In light of the specific instructions given by the trial court regarding petitioner's appeal rights, petitioner's general declarations of innocence at trial did not rise to the level of an expression of interest in pursuing an appeal.

Moreover, although petitioner has been represented by counsel since the time he first sought a delayed appeal in the Ohio Court of Appeals, he has never provided any arguments as to why a rational defendant would want to appeal his conviction (for example, by setting forth non-frivolous arguments he would have raised on appeal). *Contrast Rodriquez,* 395 U.S. at 330 (indigent pro se petitioner, whose education was "limited" and who lacked "facility in the English language," was not required to show some likelihood of success on the merits in order to prevail on his claim that he was deprived of his right to appeal based on his counsel's failure to perfect an appeal expressly requested by him). In the absence of any showing of non-frivolous grounds for appeal or of other evidence indicating a rational defendant in petitioner's circumstances would have wanted to appeal his conviction, petitioner has not demonstrated that his counsel engaged in any unreasonable conduct to the extent he may not have consulted with petitioner about an appeal. In any event, in the absence of such evidence, petitioner has not sufficiently demonstrated that he was "prejudiced" by his counsel's failure to consult with him, or in other words, that "there is a "reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed" his conviction. *Cf. Roe,* 528 U.S. at 484-86; *United States v. Lovell,* 83 Fed.Appx. 754, 759-60 (6th Cir. Dec. 8, 2003) (not published in Federal Reporter), *cert. denied,* 124 S.Ct. 2109 (2004).

Finally, although he was specifically informed at sentencing that he had the right

14

to appointed counsel on appeal, petitioner never exercised that right. Therefore, there is no merit to petitioner's claim that, because he was incapable of perfecting an appeal on his own, his trial attorney was constitutionally obligated to do so for him in order to ensure petitioner would be afforded an opportunity to appeal his conviction.

Accordingly, in sum, this Court concludes that petitioner has not demonstrated he is entitled to habeas corpus relief based on his claim that he was denied effective assistance of counsel and his right to appeal when his trial attorney failed to assist him, "an illiterate and mentally handicapped individual," in filing and perfecting an appeal. Therefore, petitioner's sole ground for relief should be denied as lacking in merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should issue with respect to petitioner's sole ground for relief alleged in the petition, which has been addressed on the merits herein, because reasonable jurists could debate whether the claim should have been resolved in a different manner and, alternatively, whether the issues presented in the ground for relief are "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (in turn quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore GRANT petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

Date: 3/3/05
cbc

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2005 habeas orders\02-488denypet.rt-appl.waiv.exh.wpd

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Donald Hall,
    Petitioner,

    v.

Christopher Yanai,
    Respondent.

Case No. 1:02cv488
(Spiegel, J.; Hogan, M.J.)

### NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).